Mr. Iverson. Thank you, Your Honor. May it please the court. My name is Travis Iverson of Heartland Law Office in Bismarck, North Dakota, and we represent the defendant here, Roger Rickey Counts. We're asking that the lower court be reversed on two grounds. First, we assert that the trial court improperly permitted expert witness testimony of Dr. Benson because the government failed to timely disclose materials reviewed by Dr. Benson and that such failure to disclose resulted in a prejudice to the defendants. Second, we assert that the admission of forensic interview video violated the confrontation clause because a witness, namely MD, could not have been recalled as a witness and cross-examined on statements evidenced within the forensic interviews. Counsel, looking at the text of criminal rule 16A1G leads me to ask why is this A1G information? Because it was not the basis for the opinions that the government reported this witness would testify to. It might have been the basis for discovery by the defense, probably should have been so that the defense counsel wouldn't have planned the wrong cross-examination, but it doesn't fit within the plain meaning of the rule as I read it. Yes, your honor, I would admit that this argument is at best maybe an issue of first impression. Specifically within the Eighth Circuit, I did not come across any research specifically on the issue of an expert witness that intends to testify generally and not specifically to the facts that has reviewed fact specific information on the case. Our argument here is essentially that it seems that an expert witness testifying generally to educate the jury, but having information on the defendant and having someone already form an opinion, defeats the entire purpose of this witness's supposed impartiality. And revelation of that just a week before trial completely throws off. I have to stop you there because I don't understand that point. What defeats impartiality? That he's looked at stuff or that he hasn't looked or The government says he's going to give general opinions. Yes, your honor. The government's view of those general opinions are not going to relate to this case, and therefore, I don't understand what gives the government an obligation under that rule to disclose everything that the witness may have looked at. How's the prosecutor even going to know that? Where's this bias business? I just don't follow. Our argument here is that even though the expert witness is intending to simply educate the jury, testify as to most operandi and possibly just general nature of alleged sexual offenders, the information that's in testimony that's chosen to be given to the jury by itself may be biased enough, given the underlying information known about the defendant. It's hard to be completely... It's difficult to be completely... That's what cross-exam is all about and discovery. What general opinions are you going to give and what's the basis for them? The trial defense counsel here was prevented from using the particular cross-examination that he had planned on using, specifically that the expert witness had not interviewed the defendant. He was hoping to... Not a sneak attack, but he was going to destroy the guy for not having a basis for his opinions. And then lo and behold, at least not as related to the case. And lo and behold, he did. So he couldn't get the smashing surprise of, oh my gosh, jury, listen, we have an expert witness who doesn't know anything about the case. I don't understand any bias or unfairness about that. Your Honor, what I've seen in the government's brief, I believe it was page 12, they did specifically state that it was their understanding that the expert witness had come to a conclusion that the defendant here, that his conduct had indeed matched that of what they would consider that of a sexual offender. Even though that testimony was not going to be entered at trial. Okay, so as a matter of fact, according to the government, that was disclosed in a response to the motion. In which case, my other question is, why doesn't that cure any error? Any disclosure error? Such disclosure was made, I think, five days prior to trial. I cannot speak as to what defense counsel exactly would have done or should have done. But what I can say is it prevented him from trying to rally up an expert witness on his own on such a short basis without some sort of continuance on the matter after the matter had already been continued multiple times. It seems to me the response, and I assume counsel read it, and counsel said, uh-oh, I better not try to ambush this guy with the fact that his general opinions don't relate to the case because he's got opinions on the case and I don't want the jury to hear him. So the way this played out was to the defense's advantage. That is certainly one way to look at it, Your Honor. But we still believe that defense counsel was prejudiced. I did not see specifically in the transcript that the trial court offered any sort of continuance. The only thing that was offered was this limiting instruction for examination of the witness and then also there was an instruction given to the jury specifically stating that the expert witness had not given an opinion as to the defendant in this case. Unless there are any other questions regarding this matter, I'll be moving on to the second issue on appeal. That of the Sixth Confrontation Clause. What occurred here is on the first day of trial, the witness MD testified regarding an encounter with not only the defendant but also testified as to a forensic interview that was given. What I recall from the transcript is that this witness, MD, did not state specifically what was said during those interviews, just that MD had participated in these interviews. The following day, another witness for the government, Dr. Bonnie Freeze, testified as to the forensic interviews which were then offered and played before the jury. The defense counsel, Alex Reichert, objected to entry of these videos because it contained statements from this witness, MD, that were not testified to previously. On that basis, the court allowed the videos to be played. We are asserting that a Sixth Amendment Confrontation Clause violation has occurred because defense counsel was not properly permitted a chance to cross-examine MD as to these statements made in the forensic interview because those questions were not asked on MD's direct examination. The appellant's brief asserts that MD could not be recalled. I don't understand that. What's the basis for that? I believe what occurred was that the witness, MD, had been released from subpoena. So what? That doesn't prevent recall, attempting to recall. My understanding was that the witness was no longer available for Mr. Reichert to cross-examine this child. Is that in the brief? Is that in the record? I believe so. I don't have the transcript right in front of me. But I do know that Alex Reichert had objected to entry of the videos on that basis. I believe I will reserve the rest of my time for rebuttal if necessary unless there are any other questions. Very good. Thank you. Mr. Greenlee? Thank you, Your Honor. May it please the court. My name is Matthew Greenlee. I represent the United States in this matter. We respectfully ask the court to affirm the appellant's conviction. Pardon me. In this case, the defendant had, regarding issue number one, the defendant had actual notice of the opinions and the basis for those opinions of Dr. Stacey Benson's testimony. The issue of an expert witness was first raised with the defense back in June of 2019. And then we gave a formal notice on September 10th, 2019. Following the first motion in limine, the United States provided a more detailed letter for those bases and those opinions on January 30th. And then, as Judge Slocum noted, on February 5th, the United States responded to a motion in limine and stated that Dr. Benson had in fact reviewed the interview of the defendant and the forensic interviews of MD and DD. In all of its notices, the United States said that Dr. Benson's testimony would be limited to general behavioral patterns of sex offenders. And we did not seek to introduce specific information about the defendant in the case. Then at trial, the court limited Dr. Benson's testimony to general knowledge and stated that the United States could not introduce specific opinions about the defendant based on the concerns of the defendant. Her testimony at trial was in fact limited to those general opinions. And then following her testimony, the court gave the instruction that defense counsel requested, stating that she had not examined the defendant and had not rendered an opinion about the defendant. The court's rulings addressed all of defense's concerns that were raised at trial. And appellant's brief and argument don't raise any concerns that weren't addressed by the court's rulings in this case. Nor has the appellant identified how cross-examination would have gone differently or better had he known prior to February 5th that Dr. Benson hadn't testified. And because the defense knew that Dr. Benson would be retained at least as of September 10th, 2019, defense counsel did have sufficient time to retain an expert of his own. In any event, there's no prejudice in this case where the defendant was able to cross-examine Dr. Benson without any fear that she would render an opinion on the defendant. The defendant actually did draw out the point on cross-examination that Dr. Benson was speaking in generalities. The court gave the limiting instruction and defense cannot show why exclusion was necessary in this case in order to protect the defense's interests. The only authority that the defense points to is civil rule 26A to B. And I would note that that civil rule of discovery differs from the criminal rule. And that the civil rule requires the government to provide all of the facts or data considered by the expert witness. In addition to providing the opinions and the basis for those opinions. That is not the requirement of rule 16AG1 as noted by Judge Loken. For these reasons, we would ask that the court affirm the conviction of Mr. Counts for the purposes of issue one. Regarding the second issue, the forensic interview of M.D. The confrontation clause was satisfied in this case where M.D. had testified at trial. When the witness testifies at trial, what the court is concerned about is whether or not the defendant had an opportunity for effective cross-examination. The defense had that opportunity in this case and it took advantage of it. A significant portion of defense's cross-examination of the child, M.D., focused on inconsistencies between the child's trial testimony and his forensic interview. Some of those were made express by cross-examining M.D. with actual portions of the transcript from the forensic interview. And others were implied, presumably, to be used in closing argument. Just as way of an example, counsel asked M.D. if M.D. recalled watching a video shown to him by Mr. Counts of another child that was at the record in 273. M.D. did not testify about that at trial. He was asked by defense counsel if Counts had been filming M.D. He asked many questions about how frequently the abuse occurred and where it occurred and when. So he had asked M.D. if he had been abused every time he was alone with Counts. M.D. was asked if D.D., if he said that D.D. saw the abuse happen to M.D., which M.D. did not recall saying when he was at trial, M.D. did not recall stating that. Another inconsistency was defense counsel asked if M.D. told E.D. about the abuse, if it always happened in the living room, if it never happened in the bedroom. Counsel also caught M.D. in a difference where M.D. had said that it mostly happened in the morning and M.D. stated at trial that it also mostly happened in the afternoon. And then lastly, defense counsel asked M.D. if Counts' wife, Rhonda, had seen bruises on M.D.'s face. All of these points that were made in cross-examination point out inconsistencies between what M.D. had testified at trial and what he had testified to at the time of the forensic interview. So were you offering this evidence from the interviewer under what rule of evidence were you offering it? Your Honor, we were offering it under 801 D1B Roman 2. To rehabilitate the credibility of the... Yes, Your Honor. Was the defense on notice that this interviewer was going to be called? Yes, Your Honor. At least we've given a witness list which stated that the forensic interviewer would be called. And then we notified counsel the morning of each day of trial which witnesses that we intended to call for that day. And of course, we filed a motion in limine which identified two potential grounds to introduce the forensic interview under the 801 D rule. And then this court has also held under 807 that the forensic interview could also come in under that rule to address inconsistencies in the child's testimony. I was asking about notice because of the concern whether the defense could have questioned M.D. again after the interviewer testified. What would have been the mechanism for that? Would there have to be a defense subpoena to keep M.D.? Or would the court have kept M.D. if the defense had requested that? What would be the mechanism? There was no request in the record. At the time that M.D. was released from the subpoena, had the defense asked M.D. to remain available, the court would have ordered that. Alternatively, defense could have subpoenaed M.D. prior to his testimony or immediately after his testimony. It's not in the record. M.D. was available because he had asked to remain in Fargo during more of the trial than just the day he testified. We did have him available, but there was no request to recall him. I see. Okay. And then there's simply no... Because the record doesn't have any effort, there was no recall of M.D. The fact that the information came in through Bonnie Freeze is a red herring just because... Alternatively to playing the forensic interview, the United States could have just asked Ms. Freeze through testimony to introduce that evidence as opposed to the forensic interview itself. And that wouldn't have been improper for the fact that she testified sometime after M.D. had testified. There's simply no avoidable way to putting that evidence into a separate witness. At least M.D. would not have been the best witness available to lay the foundation for the forensic interview. He didn't know many of the mechanics of the interview, how the room was set up, or how the recording was made, for example. If the court has no further questions for me, I would yield my time and rest on the briefs. Very good. Thank you, counsel. Does Mr. Ivers have some rebuttal time? Yes, you do. Thank you. Just briefly, the government in its brief has cited Spotted Horse as an analogous case. However, we believe that Spotted Horse should be distinguished from the present case. While it does address the proper rule, Federal Rule 16A1G, the specific facts of the case do seem inherently different. Although there is an expert witness testifying in both of the cases in Spotted Horse, the expert witness is not testifying generally just for the prosecution, but is also testifying specifically as to the defendant's alleged actions in that case. And all parties were aware that the government's forensic expert intended to opine as to the defendant's alleged actions, which is inherently different as to what was occurring in this case. Other than that, I have nothing further on rebuttal, and I would surrender the rest of my time. Thank you, counsel. The case has been thoroughly briefed, and the argument has been helpful, as it always is. And so we will take it under advisement.